## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

### Case No. 09-22535 CIV – HOEVELER/GARBER

PSYSTAR CORPORATION,

     Plaintiff,

vs.

APPLE INC.,

     Defendant.

_____/

## DEFENDANT APPLE INC.'S MOTION TO
## DISMISS OR TO TRANSFER VENUE, WITH SUPPORTING MEMORANDUM

**Kenny Nachwalter, P.A.**
Richard Alan Arnold (Fla. Bar No. 196643)
rarnold@kennynachwalter.com
William J. Blechman, Esq. (Fla. Bar No. 379281)
wjb@kennynachwalter.com
Harry R. Schafer, Esq. (Fla. Bar No. 508667)
hschafer@kennynachwalter.com
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida  33131-4327
Telephone:  (305) 373-1000
Facsimile:  (305) 372-1861
*Attorneys for Defendant Apple Inc.*

- and -

**Townsend and Townsend and Crew LLP**
James G. Gilliland, Jr. Esq.
jggilliland@townsend.com
Mehrnaz Boroumand Smith, Esq.
mboroumand@townsend.com
Two Embarcadero Center, Eighth Floor
San Francisco, CA 94111-3834
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
*Co-counsel for Defendant Apple Inc.*
*(Pro Hac Vice Application Pending)*

Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and the "first-filed" rule, Apple Inc. ("Apple") hereby moves to dismiss this case for improper venue or to transfer this case to the U.S. District Court for the Northern District of California - a court that is already thoroughly familiar with the parties, the facts, the technology and the legal issues presented by the instant action. Alternatively, Apple seeks a transfer of this case to the Northern District of California under 28 U.S.C. § 1404(a). In support of this motion, Apple respectfully refers the Court to its supporting memorandum below.

## MEMORANDUM

**I.      INTRODUCTION**

This case is a transparent attempt by Psystar Corporation ("Psystar") to re-litigate the same issues that Psystar and Apple have been contesting before the Honorable William Alsup in the Northern District of California for almost a year and a half in *Apple Inc. v. Psystar Corporation*, Case No. 3:08-cv-03251-WHA, U.S. Dist. Ct., N.D. CA (hereinafter referred to as the "California Action"). All of the allegations in Psystar's First Amended Complaint ("Amended Complaint") are subsumed by the claims and counterclaims asserted by Apple and Psystar in the California Action long ago.  The central issues in the California Action are whether Psystar is violating federal copyright laws, including the Digital Millennium Copyright Act ("DMCA"), and breaching or inducing breach of Apple's Software License Agreement ("SLA") by selling products that run, or enable others to run, Apple's Mac OS® X operating system software on non-Apple hardware.

In the instant case, Psystar seeks a declaratory judgment about the legality of this same conduct in relation to the latest upgrade to Mac OS X, called Mac OS® X version 10.6 Snow Leopard® ("Mac OS X Snow Leopard"), released by Apple in August 2009.  Psystar also seeks a declaration in this case relating to "all future versions" of Mac OS X.  In addition, Psystar asserts a false advertising claim regarding Apple's representations that Mac OS X cannot

1

lawfully run on non-Apple hardware and antitrust claims based on the same theories set forth in Psystar's original counterclaims in the California Action.

Notwithstanding Psystar's contentions, however, this case is the inseparable twin of the California Action, as the legal claims and issues, the technology, the parties, and most of the facts are virtually identical.   First, the Mac OS X technology at issue in both cases is substantially the same.  Apple regularly releases upgrades to Mac OS X to add new features, but the basic structure of Mac OS X remains the same.  Because each upgrade builds on the last version of the software, it is registered as a derivative work (*i.e.,* Mac OS X Snow Leopard is a derivative work of both Mac OS X and Mac OS X version 10.5 Leopard®) ("Mac OS X Leopard").  (D.E. 3 at ¶ 15; *see* Mac OS X Snow Leopard copyright registration and application attached hereto as Ex. 1.)  Psystar's assertion that it "expressly wishes to make all future versions of OS X . . . part of this case" (D.E. 3 at ¶ 8-b) is a concession that there is sufficient similarity among the various versions of Mac OS X to justify their consideration in a single lawsuit.

Second, Apple also employs the same technological protection measure to prevent unauthorized access to and copying of the various upgrades to Mac OS X.  In the California Action, the evidence shows that Psystar illegally circumvented this measure and copied and distributed versions 10.5.2, 10.5.4, 10.5.5 and 10.5.6 of Mac OS X.  (*See* Ex. 2, Kelly Decl. at ¶¶ 4-5.)  Within days of Apple's release of the next upgrade, Mac OS X Snow Leopard, Psystar began unlawfully circumventing Apple's technological protection measure and making unauthorized copies, demonstrating that the technological protection measure is the same as in the previous upgrades of Mac OS X.

Third, the SLAs governing the use of Mac OS X Leopard and Mac OS X Snow Leopard are virtually identical.  Both agreements restrict use of Mac OS X to Apple® computers (*see* Ex. 3 and Ex. 4 attached hereto), a restriction Psystar clearly has violated.  Apple's ability to enforce this restriction is a core issue in the instant action, and it is an issue that has already been decided in Apple's favor by Judge Alsup in the California Action.

Indeed, Judge Alsup has already decided many of the legal issues now reasserted in Psystar's Amended Complaint. Last year, he dismissed Psystar's antitrust counterclaims against Apple, claims that virtually mirror the allegations asserted by Psystar in this case. *See Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190 (N.D. Cal. 2008)(attached hereto as Ex. 5). Just over a week ago, Judge Alsup entered summary judgment in Apple's favor, holding that Psystar: (1) directly and contributorily infringed Apple's exclusive rights to reproduce, distribute and create derivative works from Mac OS X and Mac OS X Leopard; and (2) violated the anti-circumvention and anti-trafficking provisions of the DMCA. *See* November 13, 2009 Order re Cross Motions for Summary Judgment at 10, 13-15 (attached hereto as Ex. 6). Judge Alsup also found that some of the very same defenses Psystar asserts in this action do not shield Psystar from liability. *Id.* at 5-6. There is no reason why these legal determinations should be revisited by another court, and Psystar should not be permitted to seize upon Apple's release of a new version of Mac OS X as an opportunity to forum shop.

Under these circumstances, to proceed with duplicative lawsuits would be a significant waste of the Court's and the parties' resources.  There is no compelling reason for two intellectual property actions to proceed in two different federal courts 3,000 miles apart, between the same parties, raising the same issues - many of which have already been decided in the California Action.  Indeed, having two actions addressing the same issues would only serve to delay final determination of the parties' dispute and could lead to inconsistent results.[1]

The most efficient way to definitively resolve the parties' differences is to consolidate the actions before one court that is already familiar with the parties, the facts and the law. Consequently, Apple respectfully requests that the Court dismiss this action for improper venue (granting Psystar leave to refile its claims in the Northern District of California), or transfer

---

[1] It may well be that Psystar's goal in this lawsuit is delay. Each day this matter continues is another day that Psystar unlawfully infringes Apple's intellectual property. Thus, the expeditious transfer of the case to the Northern District of California – a forum already familiar with the facts and issues and that can summarily resolve all of the issues in a matter of months – is crucial.

Psystar's lawsuit to the Northern District of California so that the parties can expeditiously resolve all of the remaining issues between them in a single forum.

## II.   PRELIMINARY PROCEDURAL STATEMENT

In July 2008, Apple filed suit seeking legal redress for Psystar's willful infringement of Apple's intellectual property rights in Mac OS X.  The case has been contentious and hard fought.  Psystar has received several unfavorable rulings, including sanctions for destroying electronic evidence of Psystar's infringing acts, dismissal of its antitrust and unfair competition counterclaims and summary judgment on Apple's claims of copyright infringement and violation of the DMCA.

When the California Action was instituted, the current upgrade to the operating system, Mac OS X Snow Leopard, was still in development.  Apple had announced its anticipated release date as Fall 2009.  On August 27, 2009, the day before Apple was set to release that Mac OS X upgrade, Psystar filed the instant action in Florida in a blatant attempt by Psystar to forum shop and re-litigate the issues it was losing in the California Action.

In response, Apple filed a motion to enjoin Psystar from re-litigating the same issues in a new case.  (*See* Ex. 7.)  Judge Alsup denied Apple's motion to enjoin Psystar from pursuing this case, stating that Apple should present any motion to transfer to this Court.  Importantly, Judge Alsup explained that his ruling was "without prejudice to any motion before Judge Hoeveler to transfer the Florida action here" and without prejudice "in the event of a transfer, to a new motion to modify the case management schedule."  (*See* Ex. 8 at 2.)  Hence, Judge Alsup anticipates this motion to transfer.

## III.   STATEMENT OF FACTS

### A.   The Parties

#### 1.   Apple and Its Products

Founded in 1976, Apple is a California corporation that makes and sells high-quality, innovative and easy to use consumer electronics products, including the Mac®, iPod® and iPhone®.  A pioneer of the personal computer revolution, Apple launched its famous Macintosh

computer in 1984.  Today the Mac line of personal computers includes the Mac Pro®, iMac®, Mac® mini, MacBook®, MacBook Pro and MacBook Air®.  Because Apple designs both the Mac hardware and operating system software to work together seamlessly, its computers offer extraordinary innovation, high reliability and superior ease of use.  Accordingly, Apple licenses its operating system for use only on its hardware and employs technological protection measures to prevent unauthorized access and use of the software.

In 2001, Apple launched the tenth generation of the Mac operating system - Mac OS X. The result of billions of dollars in research and development expenditures, Mac OS X offers extraordinary capabilities, speed and stability.  Because Mac OS X is specifically designed and optimized for use on Mac computers, Apple licenses Mac OS X for use only on Apple hardware. (*See* Ex. 3 and Ex. 4.)  This license restriction ensures that customers who use Mac OS X have only excellent experiences with Apple's products.

To protect its innovation and its intellectual property, Apple created and employs a technological protection measure - a lock-and-key mechanism - that prevents the running of its operating system on non-Apple computers.  Without obtaining Apple's key (used to unlock encrypted files in the operating system) and modifying Mac OS X, a third party cannot run Mac OS X on non-Apple hardware.

As Apple develops new features and functionality for its operating system, it releases new versions of Mac OS X.  In 2007, Apple released Mac OS X version 10.5 "Leopard."[2]  Apple subsequently released additional upgrades, including versions 10.5.1 through 10.5.8.  In August 2009, Apple released the current version, Mac OS X version 10.6 "Snow Leopard."  For each version, the SLA restricts the use of Mac OS X to Apple hardware.  The technological protection

---

[2] Apple identifies each "major" upgrade of Mac OS X by an increase in the decimal after the number 10 (*i.e.* from Mac OS X version 10.5 to Mac OS X version 10.6).  Apple has also given each of these versions fanciful names of large predator cats like Jaguar, Panther, Tiger, Leopard, and Snow Leopard to convey the strength and speed of the operating system.  Apple identifies "minor" upgrades aka "updates" to each version by using an additional decimal point and number: *e.g.*, Mac OS X version 10.5.4 was followed by Mac OS X version 10.5.5.

measures for these various versions of Mac OS X work in the same manner, also restricting the use of Mac OS X to Apple hardware.[3]

### 1.      Psystar and Its Products

In April 2008, Psystar began "assembl[ing] and sell[ing] personal computers in the United States and abroad." (*See* D.E. 3 at ¶ 1.) Psystar's business model is premised on selling products that run or enable Mac OS X to run on non-Apple hardware. Psystar, however, does not have a license to copy Mac OS X, to distribute Mac OS X, or to modify it so that it will run on non-Apple hardware. Consequently, Psystar's entire business is based on infringing Apple's copyrights in Mac OS X.

Psystar's business also entails repeated, clear violations of the DMCA. From its original "OpenMac" computer to its latest Rebel EFI software, Psystar manufactures and sells computers and software that circumvent Apple's technological protection measure in Mac OS X to enable Mac OS X to operate on non-Apple computers. Psystar first circumvented this measure in Mac OS X Leopard, version 10.5.2. Psystar subsequently circumvented this measure, and made unlawful copies, of versions 10.5.4, 10.5.5, 10.5.6, and 10.6.0. To run Mac OS X Snow Leopard on non-Apple hardware, Psystar uses the same decryption key that controls access to each version of Mac OS X Leopard. Psystar's computer systems, and all of the methods Psystar has utilized to crack the encryption of Apple's copyrighted software, already are at issue in the California Action.

---

[3] Specifically, in both versions, Apple encrypts certain Apple-proprietary executable programs (referred to as "binaries") within Mac OS X which are necessary to run the operating system. Apple's proprietary decryption "key" (embedded only in Apple hardware) is necessary to unlock these binaries and obtain access to Mac OS X. Mac OS X uses the same key to unlock the encrypted binaries in both Leopard and Snow Leopard. Indeed, customers who purchased Mac computers running Leopard are now upgrading to Snow Leopard, unlocking the software using the same key already embedded in their hardware.

**B.** **The Northern District of California Has Invested Significant Time And Resources On This Technology-Based Case**

On July 3, 2008, Apple instituted the California Action, asserting claims for direct and contributory copyright infringement, breach and induced breach of contract, trademark and trade dress infringement and unfair competition against Psystar based on Psystar's unauthorized use, reproduction and distribution of Mac OS X on non-Apple hardware. (*See* Ex. 9.) On August 28, 2008, Psystar answered and filed antitrust counterclaims against Apple, alleging unlawful tying of Mac OS X to Apple's hardware, illegal exclusive dealing and monopolization. (*See* Ex. 10.) Apple moved to dismiss Psystar's counterclaims. After reviewing the parties' papers and hearing lengthy oral argument, Judge Alsup dismissed Psystar's antitrust and unfair competition counterclaims for failure to state a plausible claim. *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d at 1204.[4] Judge Alsup afforded Psystar an opportunity to amend its counterclaims and "plead its best case" (*id.*), but Psystar chose not to do so. Instead, Psystar announced that it would no longer be claiming any antitrust violations by Apple; rather, Psystar asserted counterclaims under a copyright misuse theory. *See* Psystar's Motion for Leave to Amend Counterclaim at 9 (attached hereto as Ex. 11). Apple subsequently amended its complaint in the California Action to add a claim that Psystar has violated the DMCA by making and trafficking in devices that circumvent Apple's lock-and-key mechanism in Mac OS X. (*See* Ex. 12 at ¶¶ 46-49.)

Judge Alsup has invested significant time on the factual and legal issues relevant to this dispute. He has ruled on several discovery issues, including granting Apple's motion for sanctions resulting from Psystar's destruction of source and executable code. (See Ex. 13.) In addition, on November 13, 2009, Judge Alsup decided the parties' cross motions for summary judgment, ruling that Psystar: (1) has infringed Apple's exclusive rights to reproduce and distribute Mac OS X and create derivative works from Mac OS X; (2) is liable for contributory

---

[4] Specifically, the Court held that Psystar's antitrust counterclaim "does not plausibly allege that Mac OS is an independent market" (*id.* at 1200) and "Psystar's claim that Mac OS-compatible computer hardware systems constitute a distinct submarket or aftermarket contravenes the pertinent legal standards." (*Id.* at 1203).

infringement of Mac OS X; and (3) has violated the anti-circumvention and anti-trafficking provisions of the DMCA. (*See* Ex. 6 at 10, 13-15.) Judge Alsup also ruled against Psystar on its copyright misuse counterclaims. (*Id.* at 10-13.) Apple is now seeking a permanent injunction in the California Action that will stop Psystar from infringing Apple's copyrights in Mac OS X, circumventing or trafficking in devices that circumvent Apple's technological protection measures in Mac OS X, or aiding others in doing the same. (*See* Ex. 14 at 7-13.)

### C.   Psystar Seeks A Declaration From This Court Regarding Its Conduct That Judge Alsup Has Already Adjudicated As Unlawful

Psystar's Amended Complaint asks for a declaration from this Court *allowing* the sale and distribution of Psystar's circumvention software and computers containing copies of Mac OS X. (D.E. 3 ¶¶ 16-20.) Judge Alsup, however, has already ruled that Psystar's conduct with respect to Mac OS X is unlawful. Furthermore, Psystar is attempting to repackage and reassert the same antitrust claims that Judge Alsup previously dismissed over a year ago and that Psystar chose not to replead. (*Id.* at ¶¶ 21-25.)

### IV.   <u>LEGAL ARGUMENT</u>

### A.   This Case Should Be Dismissed or Transferred to the Northern District of California under the "First-Filed" Rule

Under the "first-filed" rule, the instant action should be dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(3) for improper venue so that Psystar can refile it in the Northern District of California; alternatively, this Court should transfer this case to the Northern District of California. The "first-filed" rule is a generally recognized principle of federal comity that permits a district court to refuse to hear an action, or to transfer an action, when a complaint involving the same parties and similar issues has already been filed in another federal district. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) ("Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."); *see also EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988); *Pacesetter Sys., Inc.*

*v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *Great Northern Ry. Co. v. Nat'l R.R. Adjustment Bd.*, 422 F.2d 1187, 1193 (7th Cir. 1970). "The purposes of the rule are to conserve judicial resources and avoid conflicting rulings." *Vital Pharms. v. Cytosport, Inc.*, 2009 U.S. Dist. LEXIS 14296, *7 (S.D. Fla. Feb. 9, 2009) (citing *Supreme Int'l Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 606 (S.D. Fla. 1997)).

When two actions involving overlapping issues and parties are pending in two federal courts, the first-filed rule provides a strong presumption in favor of the forum of the first-filed suit. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) (citing *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990)) (describing the first-filed rule as "well-established") and *Church of Scientology of Cal. v. United States Dep't of Defense*, 611 F.2d 738, 750 (9th Cir. 1979) (noting that the first-filed rule "should not be disregarded lightly"). Absent "compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982).

The Eleventh Circuit requires the party opposing jurisdiction in the first-filed forum to carry the burden of proving that "compelling circumstances" warrant an exception to the first-filed rule. *Manuel*, 430 F.3d at, 1135. That is a burden that Psystar cannot meet.

### B.     All of the Claims in Dispute in the Florida Complaint are Presented in the First-Filed California Action

The California Action and the instant action involve the exact same parties and substantially identical factual and legal issues. Mac OS X version 10.6 Snow Leopard is merely the latest of many upgrades of Apple's Mac OS X, building on preceding versions that are indisputably part of the California Action. All versions of Mac OS X, including Snow Leopard, are protected by the same technological protection measure, which Psystar has circumvented in violation of the DMCA. Because of the identity of the parties and the material facts and claims, this Court should either dismiss this case for improper venue (with Psystar being free to refile it in the Northern District of California), or transfer this lawsuit to the Northern District of

9

California. *See, e.g.*, *Cadle*, 174 F.3d at 603; *SASCO v. Byers*, 2009 WL 1010513, \*4 (N.D. Cal. Apr. 14, 2009) ("The relevant lawsuits need only be substantially similar, rather than identical, to trigger the [first-to-file] rule.").

1.   **Psystar's Declaratory Relief Claim Regarding Copyright Infringement Duplicates the Copyright Claims at Issue in the California Action**

Apple's California complaint alleges that Apple owns registered copyrights in Mac OS, Mac OS X, Mac OS X version 10.5 Leopard and the individual files constituting components of these software programs and that Psystar's manufacture, use, and sale of computers running Apple's Mac OS X infringe those copyrights. (*See* Ex. 12 at ¶ 26.) The Snow Leopard copyright is registered as U.S. Copyright Reg. No. TX 6-973-319 and is a derivative work of Mac OS X and Mac OS X Leopard. (*See* Ex. 1.)[5]

Because Mac OS X Snow Leopard is an upgrade and derivative work of Mac OS X and Mac OS X Leopard, Psystar's copying infringes Apple's copyrights in *all three* works. Accordingly, a declaration of whether Psystar infringes Apple's copyrights in Snow Leopard necessarily includes a determination of whether Psystar is infringing Apple's copyrights in Mac OS X and in Max OS X Leopard - the very issue Judge Alsup recently decided in Apple's favor and against Psystar in the California Action. Any argument by Psystar that Snow Leopard is somehow distinct should be resolved by Judge Alsup in the California Action in connection with his upcoming determination of the appropriate scope of the injunction to be entered against

---

[5] In the California Action, Psystar claimed that because Apple had not registered Snow Leopard as a copyright, it could not properly be included in the California Action. Of course, Snow Leopard is now a registered copyright. Nevertheless, the fact that Snow Leopard was not a registered copyright at the time Apple filed its claims in California is of no moment. Once a court has jurisdiction over an action for copyright infringement under 17 U.S.C. section 411, the court may grant injunctive relief to restrain infringement of any copyright, whether registered or unregistered. *Pac. & S. Co., Inc. v. Duncan*, 744 F.2d 1490, 1499 n.17 (11th Cir. 1984). In addition, once a court has jurisdiction over a registered work, it also has jurisdiction over unregistered works that are derivative of the registered work. *Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999). In *Montgomery*, the district court found, and the Eleventh Circuit agreed, that defendant's copying of the later work infringed the copyright in plaintiff's earlier computer program. *Id*.

Psystar. Likewise, Psystar should not be permitted to simultaneously assert that: (i) all versions of Mac OS X are sufficiently similar that Snow Leopard and "all future versions of Mac OS X" ought to be considered in a single lawsuit, but (ii) that Mac OS X Snow Leopard is so different from all prior versions of Mac OS X that Snow Leopard ought to be the subject of a lawsuit separate from Mac OS X Leopard and other versions of Mac OS X.

### 2. Psystar's DMCA Claim Duplicates the DMCA Claims at Issue in the California Action

Judge Alsup ruled on summary judgment that Psystar has violated the DMCA by circumventing the technological protection measures in Mac OS X and distributing the means for circumventing to others. (*See* Ex. 6 at 13-15.) While Psystar alleges in the instant action that it defeats the technological protection measures in Snow Leopard using a new and different circumvention method, all of Psystar's computers running Mac OS X - any version of it - must misappropriate and use Apple's decryption key to accomplish that circumvention. Both Mac OS X Leopard and Mac OS X Snow Leopard use the same lock-and-key system. (*See* Kelly Dec., Ex. 2; Vidrine Decl., Ex. 15.) Mac OS X must use that same system to allow consumers with existing Mac computers to upgrade their operating system software from Leopard to Snow Leopard. (*See* Ex. 2, Kelly Decl. at ¶8.) Judge Alsup already has analyzed Psystar's circumvention of Apple's lock-and-key mechanism and has ruled that the circumvention is illegal. (*See* Ex. 6 at 3.) If there are any relevant differences, then Psystar can easily present those differences to the court in California.

### 3. Psystar's Declaratory Relief Claims Regarding Apple's SLA Duplicate the Breach of Contract Claims at Issue in the California Action

All of the issues raised by Psystar's breach of Apple's SLA are also present in the California Action. Each time Psystar loads *any* version of Mac OS X onto a Psystar computer, Psystar breaches the SLA because that contract (whether governing the use of Leopard or Snow Leopard) explicitly states that the licensee may only install Apple's software on an Apple computer.

The slight differences in earlier and later versions of Apple's SLAs are not material and certainly do not justify two separate cases in two separate venues on opposite ends of the country. Both the older and newer versions of the Mac OS X SLA explicitly state that Apple's software, "whether preinstalled on Apple-labeled hardware, on disk, in read only memory, on any other media or in any other form (collectively the 'Apple Software') are licensed, not sold, to you by Apple Inc. ('Apple') for use only under the terms of this license." (*See* Ex. 3 at ¶1 and Ex. 4 at ¶1.) The older version of the SLA, dated August 14, 2007, states that "You own the media on which the Apple Software is recorded but Apple and/or Apple's licensor(s) retain ownership of the Apple Software." (*See* Ex. 3 at ¶1.) The more recent version of the SLA, dated July 15, 2009, similarly states "Apple and/or Apple's licensor(s) retain ownership of the Apple Software itself and reserve all rights not expressly granted to you." (*See* Ex. 4 at ¶1.)

Psystar has argued that it is not bound by the SLA because Apple "sells" Mac OS X, rather than licenses it. This is known as the "first sale" defense under copyright law.[6] Resolution of the applicability of this defense was already determined in Apple's favor in the California Action (*see* Ex. 6 at 7) and Judge Alsup would therefore be in a perfect position to address Psystar's attempt to raise this defense again with respect to Snow Leopard.

### 4.     Psystar's Lanham Act Claim Duplicates the Claims at Issue in The California Action

Psystar adds a Lanham Act claim in this action based entirely on the premise that Apple is falsely stating that Mac OS X can only be run lawfully on a Mac. (D.E. 3 at ¶¶ 26-27.) But Judge Alsup has already ruled that Psystar's actions are unlawful, and that decision eliminates the underlying premise of Psystar's Lanham Act claim. (*See* Ex. 6 at 15.) Thus, the presence of this directly related (though meritless) claim also weighs heavily in favor of transferring this case to the Northern District of California.

---

[6] *See Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F. 3d 769,786 fn. 9 (9th Cir. 2006)("[T]he first sale doctrine rarely applies in the software world because software is rarely 'sold.'").

**5.**   **Psystar's Antitrust Claims in the Florida Action Already Have Been Addressed and Dismissed in the California Action**

Psystar should not be allowed to re-assert in a new action before this Court essentially the same antitrust theories dismissed in the California Action and that Psystar declined to replead. As noted above, at the time he dismissed Psystar's antitrust counterclaims, Judge Alsup ordered Psystar to "plead its best case" if it sought to replead any counterclaims. In its motion for leave to file an amended counterclaim, Psystar abandoned any attempt to plead antitrust claims and instead sought to assert counterclaims based upon a copyright misuse theory. Yet, in complete disregard of Judge Alsup's Order, Psystar has now tried to revive its unfounded antitrust claims in the instant case, rather than amending and bringing them in the California Action. As demonstrated below, Psystar's antitrust claims in the instant case have already been addressed and dismissed in the California Action.

**a)**   **Psystar's tying and exclusive dealing allegations merely restate claims that already were dismissed**

In the California Action, Psystar previously alleged a claim under Section 1 of the Sherman Act "to seek redress for APPLE's illegal tying of the Mac OS to Apple-Labeled Computer Hardware Systems." *See* California Counterclaim, a copy of which is attached hereto as Ex. 10 at ¶2. These allegations were not limited to any one version of Mac OS X. Here, Psystar re-asserts the same tying claim: "Apple violated § 1 of the Sherman Act, 15 U.S.C. § 1, by tying and attempting to tie Mac OS X Snow Leopard to Macintosh computers . . . ." (*See* D.E. 3 at ¶21.)

Similarly, Psystar's claim that Apple's licensing of Mac OS X only for use on Apple computers constitutes "exclusive dealing" duplicates its dismissed allegations in the California Action. There, Psystar asserted a claim "pursuant to 15 U.S.C. § 14 (the Clayton Act) to seek redress for APPLE's illegal requirements of its customers to exclusively deal with APPLE as it pertains to the Mac OS [not limited to any specific version] and Apple-Labeled Computer Hardware Systems in domestic, interstate commerce." (*See* Ex. 10 at ¶4.) Here, Psystar reiterates a mirror image of that claim: "[Apple's software license agreement] further constitutes

an illegal exclusive-dealing arrangement under § 3 of the Clayton Act, 15 U.S.C. § 14, because it purports to condition sales of Mac OS X Snow Leopard on an agreement that the purchaser will not deal with those who compete with Apple in selling personal computers . . . ." (*See* D.E. 3 at ¶21.) Judge Alsup already considered and rejected these allegations under Federal Rule of Civil Procedure 12(b)(6) for failure to state a viable claim.

> **b)      Psystar's repackaged monopolization claim was previously dismissed and remains fatally flawed**

In the instant case, Psystar alleges that "Apple restrains trade in personal computers that run Mac OS X, collects monopoly rents on Macintoshes, and monopolizes the market for 'premium computers.'" (*Id.* at ¶ 6.) Psystar's allegation that Apple restrains trade in "personal computers that run Mac OS X" is no different than Psystar's previous attempt in the California Action to define a relevant product market by a single brand - the supposed market for "Mac OS compatible hardware." (*See* Ex. 10.) After a thorough analysis, Judge Alsup ruled that Mac OS-compatible computer hardware systems do not constitute a distinct submarket or aftermarket under applicable antitrust laws and dismissed these claims. *See Apple,* 586 F. Supp. 2d at 1203 ("Psystar's claim that Mac OS-compatible computer hardware systems constitute a distinct submarket or aftermarket contravenes the pertinent legal standards . . . .").

Psystar makes another effort to re-package its previously-dismissed monopolization claim by re-defining the relevant market. Psystar claimed in the California Action that Apple had attempted to "maintain its monopoly and control prices in the Apple-Labeled Computer Hardware Systems submarket and to destroy competition in the Mac OS Capable Computer Hardware Systems market . . . (and submarkets)." (*See* Ex. 10 at ¶3.) Psystar now alleges a similar and equally fictitious relevant market and implausible monopolization claim: "Apple violated § 2 of the Sherman Act, 15 U.S.C. § 2, by monopolizing and attempting to monopolize the market for premium personal computers, that is, personal computers priced above $1,000." (D.E. 3 at ¶¶ 22, 23.)

14

There is no legal or factual basis for Psystar's "premium computer" market definition. Psystar has not alleged, and cannot allege, that a $999 personal computer is not reasonably interchangeable with a $1,001 personal computer. As Judge Alsup already ruled, relevant product markets are defined by "'reasonable interchangeability' of use" - not by an arbitrary dollar figure or a single brand. *Apple*, 586 F. Supp. 2d at 1198-99.

Moreover, Psystar's market definitions in the instant action contradict its prior pleadings in California. There, Psystar alleged a $1,099 Apple MacBook was a counterpart to a $674 Dell laptop. *See* California Counterclaim, Ex. 10, at ¶ 36. Now, directly contrary to this prior allegation, Psystar's new, contrived market definition would mean these "counterpart" computers are in entirely separate relevant product markets. As Judge Alsup reiterated in his prior ruling: "The market is composed of products that have reasonable interchangeability for the purpose for which they are produced - *price, use and qualities considered*." *Apple, supra*, 586 F. Supp. 2d at 1199 (citing *United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 406 (1956)) (emphasis in original). Psystar's new monopolization theory is just as flawed as its old one, which the California court has already thoroughly considered and rejected. If Psystar is going to attempt to raise these antitrust claims again, it should do so before Judge Alsup.[7]

### C.      Even if this Court Believes Psystar's Claim is the "First-Filed" Lawsuit, It Should Still Transfer the Case to the Northern District of California

Psystar may attempt to argue that the instant action is really the first filed lawsuit "regarding Snow Leopard," despite the extensive similarities between Mac OS X Snow Leopard and the earlier versions of Mac OS X unquestionably at issue California. Even if the Court were to agree, it should still transfer this case to the Northern District of California. Courts in the Eleventh Circuit have consistently held that dismissal of a first-filed declaratory judgment action is warranted when that action was filed in anticipation of 'imminent' judicial proceedings. *Ven-Fuel, Inc. v. Dep't of Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (dismissing a declaratory

---

[7] To the extent Judge Alsup's ruling collaterally estop Psystar's claims, he should determine that issue.

judgment action when the action was filed the day after receipt of a letter promising judicial proceedings if an assessed penalty was not paid); *Bellsouth Advertising & Publishing Corp. v. The Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) ("when a declaratory judgment suit is filed simply in anticipation of another parallel suit, courts have often dismissed the first suit as an improper effort to forum shop") (internal citations omitted); *Philibert v. Ethicon, Inc.*, 2005 WL 525330, *1 (S.D. Fla. Jan. 14, 2005) citing *Carl v. Republic Sec. Bank*, 2002 WL 32167730, *3 (S.D. Fla. Jan. 22, 2002) ("One compelling circumstance counseling departure from the first-filed rule is where one party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum.").

Psystar filed suit in Florida the day before Apple publicly released Mac OS X Snow Leopard and roughly a week before Psystar first sold a computer running the new upgrade of Mac OS X. This is before Apple would have had a good faith and reasonable basis to seek to move to amend its complaint to include Snow Leopard in the California Action. Psystar's Amended Complaint in Florida admits that it is a preemptive lawsuit, stating Psystar is "confident, based on the ongoing litigation with Apple over Mac OS X Leopard, that Apple will view Psystar's decision to sell computers running Mac OS X Snow Leopard as illegal. Counsel for Apple has also so stated. Accordingly, Psystar brings this action to seek a declaratory judgment that it may sell and continue to sell computers running Mac OS X Snow Leopard . . . ." (D.E. 3 at ¶ 4.)

Psystar correctly anticipated that Apple would seek to include Snow Leopard in the California Action as soon as Apple became aware that Psystar was selling computers running the newest upgrade to Mac OS X. Rather than pursue its rights in the court already familiar with the facts and the law, Psystar preemptively sued Apple in Florida. Psystar then failed to serve Apple with a copy of its new lawsuit for more than two months, having achieved its forum-shopping goal. Psystar's intent here is transparent; it did not seek to pursue expeditiously "new" claims regarding Snow Leopard. Instead, Psystar sought to delay resolution of any dispute regarding Snow Leopard and to establish a foothold in a different forum in case the California Action went

16

poorly for Psystar.  This Court should not countenance Psystar's tactics and should either dismiss this case or transfer it to the Northern District of California.

**D.  This Case Should Also be Transferred to the Northern District of California Under 28 U.S.C. § 1404(a)**

While application of the first-filed rule should result in the dismissal or transfer of this case to the Northern District of California, transfer of this action to California is also appropriate pursuant to 28 U.S.C. § 1404(a).  Under Section 1404(a), Congress authorized courts to transfer cases in order to prevent "wastefulness of time, energy and money," and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960).  Litigation of "related claims in the same tribunal is favored in order to avoid duplicitous litigation, attendant unnecessary expense, loss of time to courts, witnesses and litigants, and inconsistent results." *Imvenco PVBA Antwerp v. Maersk Line*, 1992 WL 442695 at *3 (S.D. Fla. 1992) (citations omitted).  Even in instances where the related claims are not identical, transfer is appropriate when it advances trial efficiency and the interests of justice. *See, e.g., SOC-USA, LLC v. Office Depot, Inc.*, 2009 WL 2365863 at *4 (S.D. Fla. 2009); *Breckenridge Pharm., Inc. v. KV Pharm. Co.*, 2009 WL 1404698 at *6 (S.D. Fla. 2009).

This Court has broad discretion to transfer a case to another district for the convenience of the parties and witnesses, and in the interests of justice. *See England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1520 (11th Cir.1988); *Thermal Techs., Inc., v. Dade Service Corp.*, 282 F. Supp. 2d 1373, 1375 (S.D. Fla. 2003).  Transfer is appropriate when, as here, the moving party can demonstrate: (1) an adequate alternative forum is available in which the action could have been filed, (2) public and private factors favor transfer, and (3) the plaintiff can proceed with his suit in the alternative forum without undue inconvenience or prejudice. *Office Depot, Inc.*, 2009 WL 2365863 at *3; *Thermal Techs.*, 282 F. Supp. 2d at 1376 (ordering transfer after applying a two-part test asking whether the action could have been brought in the alternative venue and weighing the appropriate range of relevant public and private factors for or

17

against transfer).  To determine whether private and public interests favor transfer, the Eleventh Circuit has considered a wide-range of factors, including: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d at 1135, n. 1; *Breckenridge Pharm., Inc.*, 2009 WL 1404698 at *3. Applying the foregoing precepts to this case demonstrates that the Court should transfer this matter to the Northern District of California.

### 1.    The Northern District of California Provides an Ideal Forum to Resolve all of the Claims in this Action

As detailed above, the same claims, issues, and facts have been actively litigated before Judge Alsup in the California Action for almost a year and a half.  Whatever arguments Psystar wants to present to distinguish its infringement of Mac OS X version 10.6 Snow Leopard from Psystar's adjudicated infringement of Mac OS X and Mac OS X version 10.5 Leopard, there is a fully-informed court ready to make such a determination.  The Northern District of California - aware of this case and expecting this motion to transfer - is not just an adequate alternate forum, it is an ideal one.  Accordingly, this factor weighs heavily in favor of transferring this case to California.

### 2.    Public and Private Factors Weigh in Favor of Transfer of this Action to the Northern District of California

Where, as here, the same witnesses and evidence would be required in two geographically diverse forums, transfer and consolidation of the two actions is heavily favored. *See, e.g., Tingley Sys., Inc. v. Bay State HMO Mgmt., Inc.*, 833 F. Supp. 882, 886 (M.D. Fla. 1993) (parties and witnesses would be greatly burdened if they were required to travel between two forums in two related cases; avoiding this inconvenience and expense, and preserving

judicial resources, mandated transfer).  Transfer to the Northern District of California would result in a single presentation (by both parties and witnesses) of the evidence underlying these claims.

The interests of efficiency and justice overwhelmingly support the transfer of this case to California. Judge Alsup already knows the claims, issues, facts and parties in this case.  It would be far more efficient and far less costly for both sides to have the universe of the parties' disputes promptly decided in a single forum by Judge Alsup.  This would also serve the interests of justice, eliminating any possibility of conflicting results.  Furthermore, there can be no question that it would be far speedier (and therefore just) to have all the issues decided by one court.  This can only be achieved in the Northern District of California.

> **3.**      **Psystar Can Bring its Suit in the Northern District of California without Undue Inconvenience or Prejudice**

To the extent that Psystar has any legally viable claims, they can be heard and resolved in the California Action.  There would be no undue inconvenience or prejudice to Psystar.  It is already appearing before the court in the California Action.  Certainly, the determinations that relate to Mac OS X Snow Leopard will be reached and resolved faster as a component of the California Action than if the instant case were to proceed here from its infancy.

## V.      CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court issue an order dismissing or alternatively transferring this lawsuit to the Northern District of California. Proceeding with duplicative lawsuits simultaneously - between the same parties and involving virtually identical facts and issues - will waste considerable judicial resources and raise the possibility of conflicting results.  The true purpose behind Psystar's attempt to move the parties' dispute to Florida is to forum shop and to buy Psystar more time to continue its ongoing acts of infringement.  Given the seriousness of Psystar's continuing unlawful conduct, it is essential for Apple to stop that from happening and obtain a final, fast and comprehensive resolution of all of

the parties' claims.   The Northern District of California is best positioned to provide that determination.

Dated:  November 24, 2009              Respectfully submitted,

                                        /s/ Harry R. Schafer
                                        **Kenny Nachwalter, P.A.**
                                        Richard Alan Arnold (Fla. Bar No. 196643)
                                        rarnold@kennynachwalter.com
                                        William J. Blechman, Esq. (Fla. Bar No. 379281)
                                        wjb@kennynachwalter.com
                                        Harry R. Schafer, Esq. (Fla. Bar No. 508667)
                                        hschafer@kennynachwalter.com
                                        1100 Miami Center
                                        201 South Biscayne Boulevard
                                        Miami, Florida  33131-4327
                                        Telephone:  (305) 373-1000
                                        Facsimile:  (305) 372-1861
                                        *Attorneys for Defendant Apple Inc.*

                                            *- and -*

                                        **Townsend Townsend and Crew LLP**
                                        James G. Gilliland, Jr. Esq.
                                        jggilliland@townsend.com
                                        Mehrnaz Boroumand Smith, Esq.
                                        mboroumand@townsend.com
                                        Two Embarcadero Center, Eighth Floor
                                        San Francisco, CA 94111-3834
                                        Telephone:  (415) 273-7559
                                        Facsimile:  (415) 576-0300
                                        *Co-counsel for Defendant Apple Inc.*
                                        *(Pro Hac Vice Application Pending)*

## CERTIFICATE OF SERVICE

**I hereby certify** that on November 24, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

　　　　　　　　　　　　　　/s/ Harry R. Schafer

**SERVICE LIST**
**Psystar Corporation v. Apple, Inc.**
**Case No. 09-22535-CIV–HOEVELER/GARBER**
**U.S. District Court, Southern District of Florida**

K.A.D. Camara, Esq.
camara@camarasibley.com
CAMARA & SIBLEY LLP
2339 University Boulevard
Houston, TX  77005
Phone: 713-893-7973
Fax: 713-583-1131
Attorneys for Plaintiff
[Psystar Corporation]
[via U.S. Mail]


Alexander Daniel Weisberg , Esq.
aweisberg@attorneysforconsumers.com
WEISBERG & MEYERS LLC
5722 S Flamingo Road
Suite 656
Cooper City, FL 33330
Phone:  954-337-1885
Fax: 866-577-0963
Attorneys for Plaintiff
[Psystar Corporation]
[via CM/ECF electronic filing]


Aaron D. Radbil, Esq.
aradbil@consumerlawcenter.com
aradbil@attorneysforconsumer.com
KROHN & MOSS LTD
120 W Madison
10th Floor
Chicago, IL 60602
Phone:  312-578-9428
Attorneys for Plaintiff
[Psystar Corporation]
[via CM/ECF electronic filing]

Richard A. Arnold, Esq.
raa@kennynachwalter.com
William J. Blechman, Esq.
wjb@kennynachwalter.com
Harry R. Schafer, Esq.
hschafer@kennynachwalter.com
KENNY NACHWALTER, P.A.
201 South Biscayne Blvd.
Suite 1100
Miami, FL 33131-4327
Phone: 305-373-1000
Fax: 305-372-1861
Attorneys for Defendant
[Apple, Inc.]